All right, Mr. Gelb, you have reserved one minute for rebuttal. So that gives you four minutes now. You may proceed. Thank you, sir. This case involves owners with $500 million in uncashed checks at standing. Defendants have repeatedly admitted that they are taking the owner's money without first sending a due process notice as required by the United States Constitution and Supreme Court case law. Recently, in 2020, June Medical Service, the Supreme Court held that vendors like plaintiffs have standing to represent potential prospective customers whose constitutional rights have been violated. But that's, it seems to me that what that case is saying, because it also cites Kowalski, which you're suggesting has been overruled. But what it seems to me what the Supreme Court is saying is that where the regulation or the restriction is going to impact the plaintiff and then have another effect on third parties, well, then that plaintiff can, does have standing to appear. But you don't have that here, right? Well, in this case, Your Honor. You're not going to be regulated by this. You're not affected by this regulation or this rule. No, no, Your Honor. But they discussed Kowalski extensively. And they didn't determine that Kowalski controlled that case. And they did cite 10 vendor cases in June Medical Services. Well, the logic of it is the court says a party ordinarily cannot rest its claim to relief on the legal rights or interests of third parties. But courts have long permitted abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations. The reason why is because those laws regulate the provider's own conduct, and that eliminates any risk that their claims are abstract or hypothetical. So if we apply those principles here, the practice you're challenging does not regulate what you do to help customers find uncashed checks, right? I agree, Your Honor, but Kowalski is an outliner. Kowalski was not vendors, it was attorneys. Most important is the Supreme Court questioned whether the federal courts should get involved in a state case where defendants had pled guilty and had a right to appeal their guilty plea. This case involves constitutional rights that adieu the owners of unclaimed property. Wait a minute. Your argument is also that the notification should go to the owners themselves, right? That's correct, and I will send that notice. That's what I've been doing for the last 25 years, helping owners recover their unclaimed money held by government agencies. Your Honor, but no notice even goes to you, right? So how does it even affect your – how does it affect you, I guess, is my question. That's correct, Your Honor, but the Supreme Court, starting in 1803, I believe, said when there's a constitutional right, there should be a constitutional remedy. And also in June medical – Maybe there is a constitutional – first of all, I don't know if there's a constitutional right, but if there is a constitutional violation, the owners themselves can sue the state of – Yeah, I understand, but normally, you know, a litigant can't – a party ordinarily can't arrest his claim to relief of the legal rights or interests of third parties. The Supreme Court also held in June medical that federal courts – reminded federal courts their obligation to enforce the constitutional rights. I'm just trying to help these owners with $500 million. We're not – and recently in 2023 in Tyler versus Henderson County, the Supreme Court reversed a $25,000 taking case. In this case, the defendants are taking $500 million. Yeah, but the point is simply whether you have standing to bring these claims. So anybody who is entitled to a refund gets a check, right? They're saying they don't know that they've got to cash it within six months. But if they try to cash it after six months, they won't be able to cash it. So they'll be on notice. They can – they will know everything they need to know to bring their own claim. Why is that not correct? Because during this relevant period of time, you had COVID, you had people afraid to go to banks, that they would die. And recently, as I cited in my opening brief, the New York State had $99 million in unclaimed cash checks that they took, and it happens. People – they go awry. No, it may happen. I guess the issue is why do they need you to do this? Well, nobody else is representing them. No one else is protecting them. And defendants have admitted repeatedly that they're taking the money without sending a notice. I think we can all agree that that's a constitutional violation. It's a violation of the United States Constitution. It's a violation of the Supreme Court case law that a notice has to be sent before taking a property. Isn't the practice that they're sent a check? I'm sorry, sir? Aren't they sent a check? Yes. So they receive a check, right? Right. So that tells them that they're owed a certain amount of money, right? That's correct. And if they tried to cash the check and it's been canceled, they would find that out, right? That's right, but they're not. But they're not what? Cashing their checks. These monies aren't standing year after year. But if they didn't – when they try to cash the check, if it's after six months, they will know that they're not allowed to cash the check after six months, right? That's correct, Your Honor, but they're not cashing the check. The money is just staying there and they're taking the money. They're not denying they're not taking the $500 million that belongs to the owners. They are, and I agree. I think we can agree there's a constitutional violation here because they're taking the money and they're not sending a notice. I guess the only issue is whether you have standing to assert this claim on behalf of people who are otherwise capable of bringing these claims themselves. I apologize. I don't agree with that, Your Honor, because they would have made this claim. Everybody, anyone in this room, if they had $10,000, $20,000 outstanding, they would claim that money. So why do you think that they're not claiming the money or cashing the checks? I think this goes over a period of time during COVID. They forget. People don't remember. It happens. The fact that there's money outstanding. New York State now holds $17 billion in unclaimed money. $17 billion. But they don't send a notice either, Your Honor. But if the person who got the check comes in after six months and says, oh, I want to get this, they can, right? The answer is maybe. The Supreme Court also ruled in the same case I was discussing, Tyler versus Henpin County, where they ruled $25,000 of legal taking, that there has to be a mechanism for claiming your money. There has to be a procedure. Now, the defendants claim they have a website that helps the people claim their money. That statement's false. There's no name. There's no address. All there is is a property ID number and that's it. No money outstanding. And so they're violating the Supreme Court case law in 2023 where there has to be an ability to claim your own money if it goes outstanding. And last but not least, this is very important, Your Honor. In that case, 2023, the Supreme Court rejected the taking of unclaimed money and claiming it's what they call abandoned. This $500 million is not abandoned. The people are unaware that they have money outstanding and do them. And I'm trying to help them recover their money and comply with the Constitution. All right. Well, you reserved a minute for rebuttal. We'll now hear from Ms. Vizgaitis. Am I pronouncing it? Vizgaitis? Yeah. All right. Sorry about that. No. I was close. Very close. Good afternoon, Your Honors. Rebecca Vizgaitis for the Appellees. This Court should affirm the dismissal of the amended complaint. Mr. Gelb does not have standing to bring his claims regarding the cancellation of uncashed checks, and he has abandoned any federal claims regarding his FOIL request. He has no standing to bring the constitutional claims that he's attempting to assert here because he failed to allege that he suffered an injury, in fact, related to the Department of Finance's check cancellation policy. As Your Honors have been suggesting, he has really never articulated any injury to himself based on the policy here. In fact, he seemingly stands to benefit from the policy he's attempting to challenge because if checks were never canceled, then there would be no need for recipients to ask for help in getting their unclaimed funds, and they would therefore have no need for plaintiff services as a money finder. He has not argued in his appellate briefing that he alleged an injury caused by the check cancellations. Instead, he argues that he suffered an injury as a result of the partial denial of his FOIL request, which is his separate state law claim that the district court declined to exercise jurisdiction over after dismissing the federal claims. But any alleged injury— You asked about the FOIL request, so I understand you're saying it's waived, but he does talk about it in the context of the other claim. So the reason it was denied is because the Department of Finance has records with ID numbers but not with the names of the recipients? Essentially— If they sent out checks to everybody, why would that be? I mean, essentially, it's just how their records are kept, and I do not know all of the details of this, especially because this was a state law claim that the district court declined to reach. But basically, there are separate databases that have the property ID number and the names and addresses associated with those, and the checks are associated with the property ID numbers. But the database that associates a property ID number with a person's name is not located at the Department of Finance? That's correct, and that is— But the Department of Finance sends out all the checks, right? Yes, although this is— There's actually a limited number of checks that are sent out. As we note in our brief, the normal course for any refunds that are owed from property taxes that are administered by the city is that any refund is applied as a credit in future years and carries over on the account associated with the property. A property owner would have to affirmatively request to have a check mailed to them if they prefer that, rather than having it applied as a credit, which goes to some of the points that Judge Sullivan was making about how individuals who receive checks would find out when they cashed a check. They also would have affirmatively requested a check, so the idea that there are— So in the case where there isn't a tax liability to apply the credit to, and there hasn't been an affirmative request, then what happens? It is held, I believe, in escrow for a period of, I think it's six years, and then at that point, I believe a check would be issued then, but there is a process laid out by DOF to account for all of that. Is there any indication that their owed money are for most of the people? There would—well, right, but they also would not have it unclaimed in the situation that Mr. Gelb is alleging here. He's specifically talking about the cancellation of uncashed checks, not the issuance of— Oh, I see what you're saying. Okay. —refunds six years in the future. And then on the FOIL request, he did challenge that in the state administrative proceeding, right? I believe so, yes, and that is the proper venue to challenge that, especially since there are no surviving federal claims here. I would also just note that the lack of injury is a fundamental reason for this court to affirm, because that's fatal to his claims. And the fact that he is trying to tie the FOIL injury to the constitutional claims is made all the more clear by his request that he has made in his reply brief that the relief he's seeking here is that he should be the one to send notice to individuals whose checks are about to be canceled or have been canceled. And there's really just no precedent for that, that he would be the person— Well, I don't know. I mean, let's say he prevailed on his constitutional claim in the FOIL claim. It would mean that the state sent out notifications to people who had outstanding checks but hadn't cashed them for a long time. And then he would have a list of their names, and he could call that person and say, Hey, you know you have an outstanding check. I will help you recover that money because you obviously have lost your check or something, so I'll help you out. I mean, that would actually allow him to do something, right, if he got relief on those two things? If he had a list specifically himself, then I think that that is what he is hoping to do and hoping to accomplish. Well, I mean, a lot of mischief could be done with a list like that, too, I imagine. Yes. And in any event, that still does not go to his constitutional claims because his constitutional claims are not remedied by giving him— He's alleging due process and taking violations here on the part of the city, and those are a separate claim that affects only the third parties whose rights he is attempting to assert and not— He would do standing claim by claim. So even if like a combination of claims maybe would help him out, that's not the way standing works. That's correct. And if this court has any questions about the application of June medical services, I'm happy to address that or anything else, but otherwise we will rest on our brief and ask this court to affirm. All right. Thank you. We'll now hear from Mr. Gelb for a minute of rebuttal. The court hit this right on the head. The defendants first send out the unclaimed check. They have the name and the address. They send out a property evaluation. They have the name and the address. Then they send out an actual estimate of the property tax, and if you don't pay your property tax, they send you another notice. They have the name and address. They turn my information request on, and they claim falsely that accessing a database would be creating a new record, which is not the law. This very court held in 2023 in ACUL immigration rights versus immigration custom services, one, you must create a program or a query and search a database in order to comply with an information request. Number two is the accessing of a database, and it's the first time the court's ever ruled this way, is not creating a new record, and that's what the defendants were claiming. Most important, in June medical, the Supreme Court also confirmed, and this is very important, Your Honor, that plaintiffs have standing to enforce when the restriction against the litigant would result in the third party's rights being violated. Here the third party's rights were being violated because plaintiff filed a freedom of information law request asking for that listing so I could send notices, and they did not comply with my request because they wanted to stop me from sending a notice. But your rights are not being violated by the constitutional violation. You're just saying you took some – you want to take some action to remedy the constitutional violation yourself and the denial of your – The two are related. The freedom of information request and the constitutional violations are related because they wanted to stop me from sending a notice to the owners. That's the only reason they didn't give me the listing, and they have never denied that statement, so according to case law, that statement's omitted. All right. Well, thank you. We will reserve decision.